IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS McKEITHAN,              :
       Plaintiff              :
                              :   CIVIL NO. 1:10-CV-1751
       v.                     :
                              :
NELSON IANNUZZI, N.P., et al., :
       Defendants             :

*M E M O R A N D U M*

I. *Introduction and Procedural History*

      The pro se plaintiff, Dennis McKeithan, an inmate at SCI-Mahanoy, Frackville, Pennsylvania, filed this action in the Court of Common Pleas of Schuylkill County, Pennsylvania, as a state-law petition for a writ of habeas corpus. The petition set forth several complaints Plaintiff had about his medical care at the prison. Nelson Iannuzzi, a nurse practitioner; John Lisiak, M.D., a physician; Marva Cerullo, the prison's Chief Health Care Administrator; and Alice Chipriano, a nurse supervisor, were named as respondents.

      Because the petition invoked federal constitutional law, respondents Iannuzzi and Dr. Lisiak removed the action to this court. The respondents filed two motions to dismiss, one by Iannuzzi and Dr. Lisiak, and the other by Cerullo and Chipriano. Treating the action as a civil-rights complaint, the magistrate judge recommended that it be dismissed because Plaintiff had sought only injunctive relief, and he was not entitled to such relief under the applicable standard.

Plaintiff filed objections, contending that he had filed a habeas petition seeking injunctive relief in state court only so he could obtain a hearing on his medical complaints. Since the respondent-defendants had removed the action to federal court, he requested an opportunity to file a civil-rights complaint seeking damages. We granted that request, and Plaintiff filed an amended complaint which took the place of his habeas petition. The amended complaint added another defendant, Amy Albertson, a blood lab technician at the prison. The amended complaint sets forth three Eighth Amendment medical claims: (1) failure to treat an ingrown toenail; (2) failure to draw periodic blood samples in an hygienic and safe way; and (3) failure to treat eczema.

We are considering the two motions to dismiss the amended complaint, one filed by Iannuzzi and Dr. Lisiak, and the other by Cerullo, Chipriano, and Albertson.

II.  *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Detailed factual allegations are not required, *id.* at 555, 127 S.Ct. at 1964; *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 564 (3d Cir.

2002), only a "short and plain statement" showing the right to relief.  *Pryor,* 288 F.3d at 564 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and quoting Fed. R. Civ. P. 8(a)(2)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal,* 556 U.S. 662,, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965).  "[M]ore than labels and conclusions" are required.  *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65.

III. *Background*

 A. *The Ingrown Toenail Claim*

Plaintiff makes an Eighth Amendment claim against Iannuzzi and Cerullo for failure to treat an ingrown toenail on his left big toe.  On this claim, he alleges as follows.  On some unspecified date, Dr. Lesiak examined Plaintiff's big toe at sick call.  The toe was infected and the nail was ingrown and stabbing into his skin.  The nail was half-filled with blood and disfigured.  Dr. Lisiak told him he would have him seen by the foot doctor.  (Doc. 46, Am. Compl., p. 3).

On May 20, 2010, McKeithan went to the RHU Medical Triage, supposedly to be seen by "the foot doctor podiatrist."  Instead, defendant Iannuzzi, the nurse practitioner was there, sitting on a stool with goggles on and pretending to be the podiatrist.  (*Id.*).  Iannuzzi did not have the qualifications or the tools to treat Plaintiff's toe.  (*Id.*).  When Plaintiff stated he was there to see the podiatrist, Iannuzzi responded that he was "the foot doctor" and that he was going to clip McKeithan's toe nails.

3

McKeithan said he didn't need to have his toe nails clipped; he needed to have the blood drained out of the ingrown toenail and the nail "lefted (sic) or taken off." Iannuzzi arrogantly asked Plaintiff if he wanted the toenail clipped or not. If not, he could leave. (*Id.*). McKeithan allowed Iannuzzi to clip his toe nail. (*Id.*). This did nothing to relieve the condition. (*Id.*). Iannuzzi then made false entries in Plaintiff's medical file indicating he was fine. (*Id.*). Plaintiff has still not been treated for his ingrown toenail, which is painful, disfigured and full of blood. (*Id.*).

Defendant Cerullo, the Chief Health Care Administrator, and Iannuzzi came up with the idea of calling Iannuzzi a foot doctor and noting in inmates' files they had been seen by a foot doctor. "This fraudulent foot clinic was created in order to save money for the agency" because the inmates were not being seen by a real podiatrist. (*Id.*, p. 4).

B. *The Failure to Draw Blood in an Hygienic and Safe Way*

Plaintiff makes an Eighth Amendment claim against Cerullo, Chipriano, and Albertson for failure to draw blood to monitor his hypertension and angina. On this claim, he alleges as follows. Before his transfer to SCI-Mahanoy on November 2, 2009, Plaintiff had his blood tested every six months to monitor his hypertension and angina. (*Id.*, p. 5). After his transfer, he has not had his blood tested because he has refused to submit to the unsanitary and painful conditions defendant Albertson, along with Chipriano and Cerullo, have attempted to impose on him. (*Id.*).

4

More specifically, on November 13, 2009, Albertson and a correctional officer came to his cell in the RHU for the purpose of drawing blood. To obtain the blood sample from Plaintiff, Albertson "ordered him to get down on the floor, crawl up to the cell door, stick his arms through the door wicke[t], twist his body in a contorted fashion, smash his face up against the door and allow the [correctional officer] to cuff his wrist and stretch his arm out with the rope attached to the cuffs . . . ." (*Id.*).

Plaintiff has refused to give blood by putting his arms through the wicket for two reasons. First, conditions in the RHU are unsanitary. Inmates have urinated and spread feces in the cells, on the floor, on the doors and the wickets. Dirty shoes are placed on the wickets after yard. Cells are only allowed to be cleaned once a week on Saturday morning. (*Id.*). Second, Plaintiff has various medical conditions, including a degenerative knee disease for which he needs braces. (*Id.*). "Asking him to twist his body in [a] distorted fashion and suffer the pain of squatting and bending" to have his blood sample taken in unsanitary conditions constitutes cruel and unusual punishment. (*Id.*, p. 6).

Plaintiff finally had a blood sample taken on March 8, 2011, when Dr. Lesiak ordered that Albertson take the sample at the RHU Medical Triage. (*Id.*). RHU Medical Triages were put in place for this very purpose as a result of the class action in *Austin v. Pa. DOC*. The fact that blood samples can be taken in the triage unit defeats any claim that security requires that blood be taken from a prisoner while he is confined in his cell. (*Id.*).

After she drew the blood as Dr. Lisiak ordered, Albertson angrily told Plaintiff that she was not going to draw his blood in the triage unit again. She has been supported by Cerullo and Chipriano. (*Id.*).

C. *Failure to Treat Eczema*

Plaintiff makes an Eighth Amendment claim for failure to treat his eczema. On this claim, he alleges as follows. As far back as 1992, Plaintiff has had a history of skin disease. In 2003, while he was incarcerated at SCI-Dallas, doctors prescribed lotions for his eczema at the "chronic clinic." The lotion was prescribed for six months, and Plaintiff could automatically renew the prescription every thirty days for another six months. (*Id.*, p. 8).

In May 2005, after he was transferred to SCI-Fayette from SCI-Dallas, he had a skin biopsy to stop the abuse he was receiving from new medical persons at SCI-Fayette. The biopsy confirmed he had eczema. (*Id.*).

In August 2007, prison officials transferred McKeithan from SCI-Fayette to SCI-Frackville. After reviewing his file and examining him, treatments were ordered for him at the "chronic clinic" for six months at a time, to be renewed automatically every thirty days. This treatment was continued under "chronic care" when prison officials transferred him to SCI-Coal Township. (*Id.*).

On November 2, 2009, when Plaintiff was transferred to SCI-Mahanoy, Iannuzzi began a pattern of harassment concerning his treatment by discontinuing all doctor orders although he was just a nurse practitioner. On November 6, 2009, Plaintiff

6

went on a hunger strike. On November 10, 2009, Dr. Lisiak examined him and reordered his treatment for six months under "chronic" care. (*Id.*).

On April 24, 2010, when McKeithan went to sick call to renew his medication for another six months, Dr. Lisiak denied him treatment, stating that they could no longer treat him under the chronic classification because administrators at the Department of Corrections, such as defendant Cerullo, had established their own classification of chronic conditions and skin disease was not included. (*Id.*).

On May 2, 2010, a physician's assistant ordered Plaintiff's lotions for thirty days. Then various physician's assistants began to order treatment for a period of time ranging from two to ten days, stating they were ordered not to reorder plaintiff's medication for the long term. (*Id.*, pp. 8-9).

On August 19, 2010, Dr. Lisiak documented in McKeithan's medical file that his eczema "is chronic, yet he has been administratively forced to treat it as otherwise." The doctor noted that there were no open lesions but that McKeithan does have peeling and flakes on his skin. He also appeared to have responded to emollient agents in the past. Dr. Lisiak reordered "Amlactin." (*Id.*, p. 9).

On December 4, 2010, a nurse practitioner recorded that she viewed McKeithan through the cell door window and observed scratches on his back and dry patches on his legs. She reordered lotion for just two days. She told McKeithan that she could not order it long term anymore. (*Id.*).

Earlier, on June 27, 2010, Dr. Lisiak had noted that he saw several small blood stains on the back of McKeithan's t-shirts from itching and scratching and several small excavations (sic) on the upper back. He ordered lotion. (*Id.*).

McKeithan concedes that he receives "periodic and short term treatments for his eczema." (*Id.*). On October 16, 2010, a physician's assistant ordered his lotion for ten days. On November 2, 2010, a doctor ordered it for two days. On January 15, 2011, Dr. Lesiak ordered it for ten days. On January 30, 2011, a physician's assistant ordered it for ten days. (*Id.*, p. 10). However, he is "forced to go weeks at a time without treatment and "suffer[s] from excessive itching, excessive scratching, cuts and bleeding on [his] back, flaking and peeling skin on [his] feet and legs" before he can get treatment again. (*Id.*, p. 9). On October 16, 2010, December 26, 2010, January 1, 2011, and January 9, 2011, he was denied treatment. (*Id.*, p. 10).

Plaintiff alleges that he is unable to get the necessary treatment for his eczema because the defendants are attempting to avoid complying with 61 Pa. Stat. Ann. § 1013(b)(repealed)(codified at 61 Pa. Con. Stat. Ann. § 3303(b)) which Plaintiff alleges prohibits charging an inmate a fee for chronic conditions, as well as medical emergencies and pre-existing conditions. (*Id.*, p. 10).

He also alleges that defendant Cerullo violated the Eighth Amendment when she made and enforced the administrative decision to change the classification of eczema from a chronic condition to a nonchronic one. Similarly, he avers that Dr. Lisiak

violated the Eighth Amendment when he started treating Plaintiff's eczema as a nonchronic condition as a result of the administrative change.

IV.   *Discussion*

    A.  *Pertinent Eighth Amendment Law*

The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3rd Cir. 1999) (quoting *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22, 31 (1993)). In the context of prison medical care, the plaintiff must prove that (1) he had a serious medical need and (2) that the defendants were deliberately indifferent to that need. *Id.*

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)(quoted case omitted); *McCabe v. Prison Health Services*, 117 F. Supp. 2d 443, 450 (E.D. Pa. 1997); *Rodriguez v. Brewington-Carr*, 2002 WL 484714, at *4 (D. Del.). Deliberate indifference requires "obduracy and wantonness," "a recklessness or conscious disregard of a serious risk" to the prisoner. *Rouse, supra*, 182 F.3d at 197 (quoted cases omitted). It "can be shown by 'intentionally denying or delaying medical care.'" *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251

(1976)).  Negligence does not establish an Eighth Amendment violation.  *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001).  Neither does an inmate's disagreement with the care he is receiving.  *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  Additionally, a nonphysician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff, absent some reason to know that the staff is mistreating the inmate.  *Id.* at 236.

   B.  *The Ingrown Toenail Claim*

Defendants Iannuzzi and Cerullo have been named in this claim.  Iannuzzi moves to dismiss the claim on the following grounds.  First, an ingrown toenail is not a serious medical need.  We disagree with this position, at least in light of Plaintiff's allegations.[1]  A serious medical need is one that has been diagnosed by a physician as requiring treatment.  Here, Plaintiff alleges that Dr. Lisiak had examined his toenail and had decided he should see a foot doctor, thus satisfying the first part of an Eighth Amendment medical claim.

Iannuzzi next argues that Plaintiff has failed to allege deliberate indifference as he alleged that Iannuzzi did treat his toenail by clipping it.  Hence he has

---

[1] There is authority for Defendants' position.  *See Marchwicz v. Hillsborough Cnty. Dep't of Corr.*, No. 11-109, 2011 WL 5570634 (D.N.H. Nov. 16, 2011)(adopting the magistrate judge's report, 2011 WL 5571825, at *4); *Patterson v. Kim*, No. 08-873, 2009 WL 2982753, at *8 (W.D. Mich. Sept. 14, 2009); *Hess v. Tulsa Cnty. Sheriff's Office*, No. 08-603, 2009 WL 1149252, at *3 (N.D. Okla. April 27, 2009).  However, we note that in all these cases the court went on to find there had been no deliberate indifference because medical treatment had been provided.

only shown a disagreement about treatment, which is insufficient for an Eighth Amendment violation. We agree with this argument and will dismiss the ingrown toenail claim.[2]

However, we do recognize that Plaintiff also alleges that the condition of his ingrown toenail persists, that it remains painful, disfigured and full of blood. We will permit Plaintiff to file a second amended complaint on this claim if he can set forth factual allegations describing the condition of the toenail, naming the particular prison employee(s) who have failed to treat his ingrown toenail, and the occasions when they refused him treatment.

C. *The Blood Sample Claim*

Plaintiff has named as defendants on this claim Cerullo, Chipriano and Albertson. Plaintiff alleges that requiring him to put his arms through the wicket to allow blood to be drawn violates the Eighth Amendment because the wicket is unsanitary and his physical limitations cause him pain while doing so.

We disagree. Conditions are sanitary enough as long as Plaintiff cleans the wicket, and his arm is disinfected at the spot where the blood is drawn. And since the blood is only drawn once every six months, Plaintiff should be able to put his arm through the wicket despite his physical limitations.

---

[2] In the amended complaint, Plaintiff named Cerullo as a defendant and alleges that she and Iannuzzi came up with the idea of falsely calling Iannuzzi a foot doctor when he is just a nurse practitioner. This allegation is immaterial to the Eighth Amendment claim, which is concerned only with whether there has been deliberate indifference to a serious medical need.

11

D. *The Eczema Claim*

Plaintiff has named as defendants on this claim Cerullo, Dr. Lisiak and Iannuzzi. Dr. Lisiak and Iannuzzi move to dismiss this claim on the following grounds. First, eczema is not a serious medical need. Second, issue preclusion bars consideration of the claim because in *McKeithan v. Beard*, No. 06-965, 2010 WL 2028092 (W.D. Pa. May 21, 2010)(adopting the magistrate judge's report, 2010 WL 2028091 (W.D. Pa. April 12, 2010)), Plaintiff litigated the same claim for his treatment while he was confined at SCI-Fayette, and lost.[3] Third, as to Iannuzzi, there is no allegation that he was aware that discontinuing Plaintiff's medications would involve a risk of harm. Fourth, as to Dr. Lisiak, there is also no allegation that he was aware of a serious risk of harm to Plaintiff. Additionally, the allegations show that Plaintiff did receive care for his eczema, and Plaintiff merely disagrees with the care he received, which would be negligence at most.

We disagree that eczema cannot be a serious medical need. Defendants have cited cases indicating it is not. *See*, *e.g.*, *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). However, the Third Circuit did deal specifically with this issue in *McKeithan v. Beard*, 322 F. App'x 194 (3d Cir. 2009)(nonprecedential), when it ordered the Western District to consider Plaintiff's Eighth Amendment claim based on the treatment for his eczema at SCI-Fayette. The Third Circuit said that eczema can be a serious medical

---

[3]   Cerullo makes this argument as well.

condition when the skin is so cracked and dry that it bleeds. *Id.* at 198. The case is nonprecedential, but we will follow it, especially since it involves the same plaintiff.[4] Here, Plaintiff alleges bleeding as a result of the eczema. Hence he alleges a serious medical need.

Next, we reject the issue-preclusion argument (although we believe the applicable doctrine is claim preclusion). Claim preclusion requires a party "'to present all claims arising out [of] the same occurrence in a single suit.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010)(quoted case omitted). In part, the defendant must show that there was a prior suit involving the same cause of action. *Id.* at 259. Whether the same cause of action is involved depends upon the essential similarity of the underlying events. *Id.* at 261.

Without going into detail, we do not believe that the same cause of action is involved. The Western District case litigated the eczema treatment Plaintiff received while he was incarcerated at FCI-Fayette from March 2005 until March 2007. In that case, the summary-judgment record established that Plaintiff had ample access to lotions to control his condition. 2010 WL 2028091, at *5. Here, Plaintiff alleges gaps in his access to the necessary lotions. He is also litigating his treatment over a different

---

[4] *Compare Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (nonprecedential)(bare allegation that the plaintiff was suffering from eczema (among other conditions) when the record showed that he had not complained about it was not sufficient to defeat the defendants' motion for summary judgment).

time frame, from about November 2009 to the present, and at a different institution, SCI-Mahanoy. We therefore conclude that claim preclusion does not apply here.

Dr. Lisiak and Iannuzzi next argue that the claim fails on the merits. As to Iannuzzi, while he is alleged to have discontinued all of Plaintiff's medications when Plaintiff was transferred to SCI-Mahanoy, there are no allegations that he knew discontinuing the medications would involve a risk of harm. We agree with this argument. Iannuzzi is alleged to have discontinued all medications on November 2, 2009, when Plaintiff was transferred to SCI-Mahanoy, but Plaintiff alleges that on November 10, 2009, Dr. Lisiak examined him and reordered his eczema treatment for six months. Plaintiff does not allege that Iannuzzi ever interfered with his eczema treatment again or that he had no lotion available for the eight days between November 2 and November 10. Hence this claim fails as against Iannuzzi.

As for Dr. Lisiak, the moving defendants argue that there are no allegations that he knew of a substantial risk of harm to Plaintiff. They also argue that Plaintiff was receiving care; he just disagrees with how he was receiving care, only for short periods of time, not for the six months at a time before eczema was no longer classified as a chronic condition.

We agree with Defendants that the amended complaint fails to state a claim against Dr. Lisiak. We begin by noting it is immaterial to the Eighth Amendment claim how eczema is classified under state law for the purpose of providing medical care to inmates. The Eighth Amendment claim concerns itself only with whether the plaintiff

had a serious medical need and whether the defendant was deliberately indifferent to that need.

Plaintiff's allegations fail to show that Dr. Lisiak was deliberately indifferent to Plaintiff's eczema. Indeed, Plaintiff alleges that Dr. Lisiak did prescribe the needed lotions on numerous occasions. Dr. Lisiak cannot violate the Eighth Amendment for treating Plaintiff's condition. Plaintiff does allege that on various occasions, he was refused a prescription (Am. Compl., CM/ECF p. 10), but he does not identify the prison employees who refused him treatment.

Along with other arguments, Cerullo, the other defendant named in this claim, has argued that Plaintiff is incorrectly attempting to base his Eighth Amendment claim on his inability to obtain a prescription for eczema lotion for six months at a time. We agree. As we noted above, Pennsylvania's characterization of eczema as chronic or not is irrelevant to the Eighth Amendment claim as long as Plaintiff is being treated. Hence even if Cerullo is responsible for the change in the classification of eczema, Plaintiff fails to state a claim. We add that Plaintiff does not aver that Cerullo ever prevented him from obtaining lotion for his eczema.

We will permit Plaintiff to file a second amended complaint on this claim if he can set forth factual allegations describing the condition of his eczema, showing that he was denied a lotion he needed for his eczema, naming the particular prison employee(s) who failed to provide him with the lotion, and the length of time he was without the lotion.

15

We will issue an appropriate order.

      /s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: December 21, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS McKEITHAN, :
    Plaintiff :
: CIVIL NO. 1:10-CV-1751
v. :
:
NELSON IANNUZZI, N.P., et al., :
    Defendants :

*O R D E R*

AND NOW, this 21st day of December, 2011, it is ordered that the motion (Doc. 47) to dismiss the amended complaint filed by defendants, Nelson A. Iannuzzi and Dr. John Lisiak, and the motion (Doc. 48) to dismiss the amended complaint filed by defendants, Marva Cerullo, Alice Chipriano, and Amy Albertson, are granted as follows:

    1. The Eighth Amendment blood-sample claim against Cerullo, Chipriano, and Albertson is hereby dismissed without leave to amend.

    2. The Eighth Amendment eczema claim against defendants, Cerullo, Dr. Lisiak and Iannuzzi and the Eighth Amendment ingrown-toenail claim against defendants Iannuzzi and Cerullo are hereby dismissed.

    3. Plaintiff is granted leave to file a second amended complaint setting forth his eczema claim and his ingrown toenail claim.

    4. The second amended complaint shall be filed within twenty-one (21) days of the date of this order.

    5. On the eczema claim, Plaintiff shall set forth factual allegations describing the condition of his eczema, showing

that he was denied a lotion he needed for the disease, naming the particular prison employee(s) who failed to provide him with the lotion, and the length of time he was without the lotion.

   6. On the ingrown-toenail claim, Plaintiff shall set forth factual allegations describing the condition of the toenail, naming the particular prison employee(s) who have failed to treat his ingrown toenail, and the occasions they refused him treatment.

   7. The second amended complaint must be a completely new pleading that stands on its own and which sets forth sufficient factual allegations supporting the claims.

   8. If Plaintiff fails to comply with this order, this action will be dismissed.

                               /s/ William W. Caldwell  
                               William W. Caldwell  
                               United States District Judge