IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS McKEITHAN, : | |
|  Plaintiff : | |
| : | CIVIL NO. 1:10-CV-1751 |
| v. : | |
| : | |
| NELSON IANNUZZI, N.P., et al., : | |
|  Defendants : | |

*M E M O R A N D U M*

I. *Introduction and Procedural History*

      The pro se plaintiff is Dennis McKeithan, an inmate at SCI-Frackville in Frackville, Pennsylvania. The case started out as a habeas corpus petition in state court, setting forth several complaints Plaintiff had about his medical care while he was an inmate at SCI-Mahanoy in Frackville. The defendants all worked at SCI-Mahanoy: Nelson Iannuzzi, a nurse practitioner; John Lisiak, M.D., a physician; Marva Cerullo, the prison's Chief Health Care Administrator; and Alice Chipriano, a nurse supervisor.

      Because the petition invoked federal constitutional law, defendants (respondents at the time) Iannuzzi and Dr. Lisiak removed the action to this court. We granted Plaintiff's request to convert the case to a civil-rights one, and Plaintiff filed an amended complaint. The amended complaint added another defendant, Amy Albertson, a blood lab technician at the prison. The amended complaint set forth three Eighth Amendment medical claims: (1) failure to treat an ingrown toenail; (2) failure to draw periodic blood samples in an hygienic and safe way; and (3) failure to treat eczema.

On December 21, 2011, we dismissed the amended complaint but granted Plaintiff leave to file a second amended complaint on his eczema and ingrown-toenail claims. Specifically, we ordered:

> On the eczema claim, Plaintiff shall set forth factual allegations describing the condition of his eczema, showing that he was denied a lotion he needed for the disease, naming the particular prison employee(s) who failed to provide him with the lotion, and the length of time he was without the lotion.
>
> On the ingrown-toenail claim, Plaintiff shall set forth factual allegations describing the condition of the toenail, naming the particular prison employee(s) who have failed to treat his ingrown toenail, and the occasions they refused him treatment.

Order of December 22, 2011, ¶¶ 5 and 6, 2011 WL 6782305, at *8.

On January 17, 2012, Plaintiff filed a second amended complaint. The defendants are: Iannuzzi, Dr. Lisiak, and Cerullo. We are considering two motions to dismiss the second amended complaint, one filed by Iannuzzi and Dr. Lisiak, and the other by Cerullo.

II.  *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Detailed factual allegations are not required, *id.* at 555, 127 S.Ct. at 1964; *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 564 (3d Cir. 2002), only a "short and plain statement" showing the right to relief. *Pryor,* 288 F.3d at 564 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and quoting Fed. R. Civ. P. 8(a)(2)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662,, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965). "[M]ore than labels and conclusions" are required. *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65.

With this standard in mind, we set forth the background to this case, as Plaintiff alleges it.

III. *Background*

   A. *The Ingrown Toenail Claim*

Plaintiff alleges as follows. On some unspecified date, probably April 24, 2010,[1] Plaintiff went to sick call and saw Dr. Lisiak "concerning his infected ingrown

---

[1] On page 6 of the second amended complaint Plaintiff refers to a sick call with Dr. Lisiak on April 24, 2010.

toenail cutting into his skin and bleeding in [the] toenail." (Second Am. Compl. P. 5).[2]

On May 20, 2010, McKeithan went to the RHU Medical Triage, supposedly to be seen by "the foot doctor (podiatrist)." Instead, defendant Iannuzzi, the nurse practitioner was there, sitting on a stool with goggles on and pretending to be the podiatrist. (*Id.*). When Plaintiff stated he was there to see the podiatrist, Iannuzzi responded that he was "the foot doctor" and that he was going to clip McKeithan's toenails. McKeithan said he didn't need to have his toenails clipped; he needed to have the blood drained out of the ingrown toenail and the nail "lifted or taken off." (*Id.*). Iannuzzi arrogantly asked Plaintiff if he wanted the toenail clipped or not. If not, he could leave. (*Id.*, p. 6). McKeithan allowed Iannuzzi to clip the toenails on the left foot. (*Id.*). This did nothing to relieve the condition. (*Id.*). Iannuzzi did not have the qualifications or the tools to treat Plaintiff's toe. (*Id.*). He is not board certified to practice podiatry. (*Id.*, p. 8).

Plaintiff told Dr. Lisiak at sick call on April 24, 2010, and Iannuzzi on May 20, 2010, that in January 2009 when he had this problem at SCI-Coal Township, they lifted the toenail and when he was at SCI-Graterford, they drained the blood from the nail. (*Id.* pp. 6-7). Iannuzzi said that he did not do that and if Plaintiff did not want the nail clipped, he could leave. (*Id.* p. 7). Iannuzzi then made false entries in Plaintiff's

---

[2] The amended complaint further alleged that Dr. Lisiak told him he would have him seen by the foot doctor. (Doc. 46, Am. Compl., p. 3). In a penalty-of-perjury declaration filed on April 9, 2012, Plaintiff affirms that Dr. Lisiak scheduled him for "the foot clinic" and that he was supposed to see "the foot doctor." (Doc. 71-1, ECF p. 7, ¶¶ 3 and 4).

medical file indicating there was nothing wrong with Plaintiff's left big toe and defendant Cerullo refused to photograph the left big toe.  (*Id.*).  Plaintiff's toe "is still painful, ingrown, disfigured worst and half full of blood."  (*Id.*).

Cerullo, Mahanoy's Chief Health Care Administrator, and Iannuzzi created the fraud of calling Iannuzzi a podiatrist when he is just a nurse practitioner and noting in inmates' files they had been seen by a foot doctor.  (*Id.* pp. 7-8).  "This fraudulent foot clinic was created in order to save money for the agency" because the inmates were not being seen by a real podiatrist.  (*Id.*, p. 8).  "Defendant Iannuzzi continued to operate this fraud, and defendant Cerullo stated it would not change . . . ."  (*Id.*).

B.  *Failure to Treat Eczema*

Plaintiff alleges as follows.  On November 2, 2009, Plaintiff was transferred from SCI-Coal Township to SCI-Mahanoy.  At that time, he was under a treatment plan for his chronic eczema prescribing Amlactin lotion from October 2, 2009, through April 2010.  (*Id.*, p. 10).

Iannuzzi discontinued his treatment (apparently shortly after his arrival at Mahanoy) and when Plaintiff signed up for sick call to get his treatment, Iannuzzi told him he would not get the lotion.  Iannuzzi then falsified the report, saying that Plaintiff had jock rash and ordering cream for jock rash.  (*Id.*).

On November 6, 2009, Plaintiff went on a hunger strike because Iannuzzi discontinued the treatment.  On November 10, 2009, Dr. Lisiak examined him and

reordered his treatment for six months, until May 2, 2010, under "chronic" care. (*Id.*, p. 11).

On April 25, 2010, when McKeithan went to sick call to renew his medication for another six months, Dr. Lisiak denied him treatment, stating that they could no longer treat him under the chronic classification because Cerullo and other administrators at the Department of Corrections had established their own classification of chronic conditions and skin disease was not included. (*Id.*).[3]

Plaintiff had been without lotion for about ten days, when on May 2, 2010, Plaintiff saw physician's assistant Mummy at sick call, and Mummy ordered Plaintiff's treatment [only] for thirty days, due to the administrative order. (*Id.*, pp. 11-12). Plaintiff started going to sick call on weekends because Iannuzzi ran the sick calls on the weekdays, and he refused to renew the lotion. (*Id.*, p. 12). Various physician's assistants began to order treatment for a period of time ranging from two to ten days, stating they were ordered by defendant Cerullo not to reorder plaintiff's lotion for the long term. (*Id.*).

On June 27, 2010, Dr. Lisiak documented that "he saw several small blood stains on the back of Plaintiff's t-shirts from itching and scratching and several small excavations (sic) on the upper back. He ordered lotion for thirty days. (*Id.*).

---

[3] The second amended complaint does not mention Dr. Lisiak, but he was mentioned in the amended complaint.

On August 19, 2010, Dr. Lisiak documented that Plaintiff has "chronic eczema, yet he has been administratively forced to treat it as otherwise." (*Id.*). The doctor noted that there were "no open lesions but Plaintiff does have peeling and flakes on skin. He also appears to have responded to emollient agents in the past. Dr. Lisiak reordered lotion. (*Id.*, p. 13).

Plaintiff alleges a series of dates when he was refused lotion and when he was given lotion: (1) On October 16, 2010, Mummy refused him lotion; (2) on November 27, 2010, Dr. Sterling ordered it for two days; (3) on December 4, 2010, physician's assistant Ann Batdorf ordered it for three days, recording that she viewed McKeithan through the cell door window and observed scratches on his back and dry patches on his legs; (4) on December 26, 2010, physician's assistant R. Andruzzi refused him lotion; (5) on January 1, 2011, Iannuzzi refused him lotion; (6); on January 9, 2011, physician's assistant Mummy refused him lotion; (7) on January 30, 2011, physician's assistant R. Andruzzi reordered it for ten days. (*Id.*, pp. 13-14). "Plaintiff went two weeks with treatment." (*Id.*, p. 14).

Plaintiff alleges defendant Cerullo violated the Eighth Amendment when she contradicted a doctor's treatment and made and enforced the administrative decision to change the classification of eczema from a chronic condition to a nonchronic one. Similarly, he avers that Dr. Lisiak violated the Eighth Amendment when he started treating Plaintiff's eczema as a nonchronic condition when he knew that Plaintiff needed consistent treatment.

On the ingrown toenail claim, Plaintiff seeks the following injunctive relief: (1) an order requiring "an actual foot doctor to correct" the "injury"; and (2) an order requiring the defendants to take a picture of his left big toe. Plaintiff also seeks punitive damages in the amount of $20,000 from each defendant.

After the second amended complaint was filed, Plaintiff filed a penalty-of-perjury declaration on April 9, 2012. In this declaration, he affirms that after his transfer to SCI-Frackville on November 28, 2011, he showed Dr. Sterling his injury and on March 27, 2012, Dr. Sterling removed the toenail. (Doc. 71-1, ECF p. 8, ¶ 10).

IV. *Discussion*

  A. *Pertinent Eighth Amendment Law*

The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22, 31 (1993)). In the context of prison medical care, the plaintiff must prove that (1) he had a serious medical need and (2) that the defendants were deliberately indifferent to that need. *Id.*

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoted case omitted); *McCabe v. Prison*

8

*Health Services*, 117 F. Supp. 2d 443, 450 (E.D. Pa. 1997); *Rodriguez v. Brewington-Carr*, 2002 WL 484714, at *4 (D. Del.).  Deliberate indifference requires "obduracy and wantonness," "a recklessness or conscious disregard of a serious risk" to the prisoner. *Rouse, supra*, 182 F.3d at 197 (quoted cases omitted).  It "can be shown by 'intentionally denying or delaying medical care.'"  *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). Negligence does not establish an Eighth Amendment violation.  *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001).  Neither does an inmate's disagreement with the care he is receiving.  *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  Additionally, a nonphysician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff, absent some reason to know that the staff is mistreating the inmate.  *Id.* at 236.

      B.  *The Ingrown Toenail Claim*

In our previous memorandum, we concluded that an ingrown toenail could be a serious medical need under the Eighth Amendment.  2011 WL 6782305, at *5. Nonetheless, we decided that Iannuzzi's treatment of the nail on May 20, 2010, did not violate the Eighth Amendment because it represented a mere disagreement about treatment, which is insufficient for an Eighth Amendment medical claim.  *Id.*  We also discounted Plaintiff's allegation that Cerullo and Iannuzzi were falsely calling Iannuzzi a foot doctor when he was just a nurse practitioner.  The allegation was immaterial to an

Eighth Amendment claim, which is concerned only with whether there has been deliberate indifference to a serious medical need.  *Id.* at *5 n.2.

However, because Plaintiff alleged that the problem persisted we granted him leave to file a second amended complaint if he could "set forth factual allegations describing the condition of the toenail, naming the particular prison employee(s) who have failed to treat his ingrown toenail, and the occasions when they refused him treatment." *Id.*

Instead of describing those occasions after May 20, 2010, when Plaintiff was refused treatment for his ingrown toenail and the person who failed to treat it, Plaintiff has merely reiterated the allegations of his amended complaint against Iannuzzi and Cerullo, which we have already found do not state a claim.

We note that, in any event, the injunctive relief requested on this claim, treatment by a podiatrist, is now moot as Plaintiff affirms that some four months after his transfer to SCI-Frackville, he received treatment of the ingrown toenail by removal of the nail.  In his opposition brief, Plaintiff complains that if Iannuzzi and Cerullo had not been running a fake foot clinic, as alleged in the second amended complaint, he would not have suffered a year of pain until his transfer made the surgery possible.  (Doc. 71, ECF p. 3).  In the absence of any allegations that Iannuzzi or other medical personnel continued to refuse Plaintiff treatment, and when they refused treatment, this allegation is irrelevant to Plaintiff's claim.

C.  *The Eczema Claim*

In our previous memorandum, we decided that eczema could be a serious medical need. 2011 WL 6782305, at *6. However, we rejected the notion that the classification of the disease under state law as non-chronic, and thus preventing a long-term (six month) prescription for the disease, was immaterial to the Eighth Amendment claim. An Eighth Amendment medical claim concerns itself only with whether the plaintiff had a serious medical need and whether the defendant was deliberately indifferent to that need. *Id.* at *7. Plaintiff had failed to allege facts showing that the named defendants had refused him treatment for his eczema. We granted leave to file a second amended complaint on the eczema claim if Plaintiff could "set forth factual allegations describing the condition of his eczema, showing that he was denied a lotion he needed for the disease, naming the particular prison employee(s) who failed to provide him with the lotion, and the length of time he was without the lotion." *Id.*, at *8 (Order, ¶ 5).

We agree with defendant Cerullo that Plaintiff's claim fails because it is really an attempt to litigate the classification under state law of eczema as a non-chronic condition. As noted, we have rejected this position as an Eighth Amendment claim because the Eighth Amendment for our purposes here concerns itself with the denial of medical treatment. Plaintiff lists a number of occasions he was refused his lotion but, significantly, a number of occasions when he was given lotion, often tying the latter occasions to the administrative policy. We also note that although Plaintiff alleges when

11

he was refused lotion, he fails to allege the times he was without lotion, as required by our order. It is the times he was without lotion that are the crux of the claim.[4]

We will therefore dismiss the eczema claim as well.

                                          /s/ William W. Caldwell
                                          William W. Caldwell
                                          United States District Judge

Date: June 18, 2012

---

[4] Plaintiff does allege that for ten days before May 2, 2010, he was without lotion, but this was immediately after the April 25, 2010, conversation with Dr. Lisiak about the classification policy.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DENNIS McKEITHAN,  :
    Plaintiff  :
        : CIVIL NO. 1:10-CV-1751
    v.  :
        :
NELSON IANNUZZI, N.P., et al.,  :
    Defendants  :

*O R D E R*

AND NOW, this 18th day of June, 2012, it is ordered that the motion (Doc. 65) to dismiss the second amended complaint filed by defendant, Marva Cerullo, and the motion (Doc. 66) to dismiss the second amended complaint filed by defendants, Nelson A. Iannuzzi and Dr. John Lisiak, are GRANTED, and the Clerk of Court shall close this file.

                         /s/ William W. Caldwell
                         William W. Caldwell
                         United States District Judge